Thank you. May it please the Court, Craig Singer once again for the Carpenters. Perhaps in contrast to the case we've just been talking about, this is a very straightforward case under the duty of fair representation, which every bargaining representative owes to the members of the bargaining unit. And that duty is owed whether or not the members are also members of the representative union. And part of the duty of fair representation is not to discriminate against any employee for reason of union membership or non-membership. Help me with something here. My first take on this, and I should make clear it's not the same as my second take, which is much more favorable to your side. But my first take on this was they had a solidarity agreement. The solidarity agreement did not work out to the satisfaction of both sides. It was cancelable by either side. It was canceled. Once it's canceled, it would seem that a Carpenters Union shop steward would have a fiduciary duty to put Carpenters Union interests first and could not very well perform the conflicting fiduciary duty he would have as a shop steward for the Metal Trades Department unions. So it would not be improper discrimination. It would just be preserving conflict-free representation to remove them. Why wouldn't that be so? Because the complaint alleges that that's not the reason that the carpenters stewards were removed. These are metal trade stewards. They happen to be members of the carpenters, but they're acting as— Regardless of what their personal motive may have been, why wouldn't they have to do that to protect the people in their own unions? Well, I don't think there's—they've already admitted that they don't have to do that for that reason. But putting that aside, I mean, it's a fact issue what their actual motivation is. Whether they admit it or not, why isn't it a little like if we have lawyers jointly representing, in a joint representation agreement, two defendants whose interests appear to coincide and then the interests diverge? You can't very well have the lawyer for one defendant also still representing the other one. There's no divergent interest here. The steward is a steward for the metal trades. His or her responsibility is to represent the employees in the bargaining unit in grievances and things having to do with the collective bargaining agreement. These things come up. I mean, you get two people on the floor who get into a conflict, and each one's blaming the other one for not getting the work done properly. One's metal trades, one's carpenters. I would think the shop steward for the metal trades would have to look out for the metal trades guy. Well, I think that's probably right. They have to look out for both members equally. But the point is that that's not the decision they're making. Let's suppose you have a unit that is represented by one union, say it's the carpenters, and there are some people in it who are not members of the carpenters, as there often are, may be paying agency fees, but they're not members of the carpenters. And they say, you have to let us be stewards. Do they or don't they? There's no requirement. Does the carpenters have to let those people be stewards? There's no requirement that anyone be appointed to be a steward. No, but can they say, our policy is the only people who could be stewards are members of the carpenters. I think that they could have such a policy, but there was no such policy here. What happened is they decided, not for any legitimate reason, and this is implied very specifically in the complaint, they decided to throw out all of the existing carpenters, stewards of the metal trades who happened to be carpenters. But what difference does it make whether they didn't appoint them in the first place or threw them out after they were there? In either case, their position was you're not members of the ñ you are not ñ the union that you're a member of is not a member of the metal trades, therefore you are not a member of the metal trades, therefore you can't be a steward. Wasn't that their argument, their position? No, their position is not that. Their position is it's fine to be a member of the carpenters and be a steward. It has been fine for years. But now the building trades is telling us that we need to punish the carpenters in any way we can. Well, but wait a minute. I mean, that's the way you're putting it. But, in fact, what happened was they are no longer members of the ñ of the metal trades for whatever reason. They're not members of the metal trades. It's a separate issue. You say you're not attacking that decision. So they're just not members of the metal trades. Right, but that's not the basis for their decision. It's a fact issue. What do you mean it's not the basis for their decision? The complaint alleges that the basis for the decision to remove the carpenters had nothing to do with their ability to serve as stewards. It had everything to do with a desire to punish the carpenters on the part of the building trades, which the building trades then imposed on the leadership of the metal trades. And the metal trades reluctantly, at first, agreed to throw out the carpenters and to inflict this punishment on them to pressure the carpenters. This is part of the same pressure regime that we've been talking about in the ñ in the prior case. But it's not for good faith reasons. They can decide if they have a good faith reason to remove a steward. Is it a good faith reason that you're not a member of the metal trades? If they had ñ if they had a uniform policy that all stewards have to be a member of the metal trades because of a reason that, you know, we consider legitimate. I mean, I would think every union has that policy.  Well, once somebody is already a steward and the union leaves ñ Okay. Why does that matter? It matters for just the circumstance of it. And I think that there's no particular reason, unless the metal trades had some reason to think that a steward that is serving in that capacity is not going to be a good steward anymore for one reason or another. If they drew that conclusion, and if it was a good faith conclusion and a legitimate conclusion, a reasonable conclusion, then that's fine. But they didn't do that. So I don't really understand whether you're saying it is okay or it is not okay to have a policy that says to be a steward you have to be a member of the union. I don't think that that would violate the duty of fair representation. Counsel, I have a threshold question. Why isn't all of this just an internal union matter? How does this involve the employee-employer relationship? I don't ñ I don't see the connection.  Because under the existing labor agreement, his seniority didn't play out. Well, but the reason his seniority didn't play out is because he wasn't a steward anymore. So the entire basis for his seniority was his steward position. And the law in this circuit and elsewhere is clear that if you have an impact on the employment relationship, even if it would otherwise be an internal union matter, the impact on the employee-employer relationship makes it covered by the duty of fair representation. That's very much the case here. How does that affect the employer? I don't get it. It doesn't have to affect the employer. It has to affect the employee in his capacity as an employee for the employer. And it did so here because Mr. Crawford, who I believe is the individual you mentioned, was a steward. His job was safe. When he lost his stewardship job, his job was not safe because the collective bargaining agreement between the employer and the employee provided that only stewards get this super seniority. And that was the intent, we've alleged, of the metal trades at the behest of the building trades in removing him from his stewardship position. There was no good faith reason for that. For the duty of fair representation to apply, the person bringing the claim has to be entitled to representation. He has to be a member of the union that he's making the claim against. Now that the solidarity agreement has fallen apart, are the carpenters still members of the, oh, I forget what you call the conglomerate, the metal trades department? The requirement is that you be a member of the bargaining unit that is being represented. No. Whose requirement? I thought they're ñ where are you getting that from? That any member of the bargaining unit, whether a member of the union or not, can be a steward? No. We're talking about who's entitled to the duty of fair representation. I thought that was the question. That's my question. And every member of the bargaining unit is entitled to fair representation of the bargaining, of the exclusive bargaining represented. That's been the law for a number of years. In dealing with the employer. In dealing with the employer and dealing with any employer-employee issue. It's very broad. The complaint actually says the metal trades announce that these stewards are being stripped of their substantial and preferable for no reasons other than their carpenters' membership. So it was because, even in the complaint, it was because of their carpenters' membership. But the context is that because of the carpenters' membership, because the building trades is antagonistic to the carpenters, and Mr. Alt, the metal trades president, said, no, let's keep the carpenters because they're good. Okay. But they didn't do that in the end. In the end, he was not a member of the metal trades. So it was an internal union matter. It was because only members of the metal trades can be stewards and you're not one. But that's not the basis for the decision that we've alleged. They have not made a neutral decision that only metal trades people can be stewards. They've made a decision that carpenters can't be. And, in fact, I believe we've alleged that other non-metal trades union members have been allowed to be stewards or to remain stewards even after their union has left the metal trades. This is an entirely discriminatory action against the carpenters. It's directed toward the carpenters. There is no good faith reason for it, and it's clearly covered by the duty of fair representation. Now, putting aside stewards for a moment, the complaint also alleges multiple other bad faith actions by the metal trades to punish carpenters in their bargaining units. They've refused to file grievances for carpenters. They've refused to refer carpenter members for work just because they were carpenters. They diverted carpenter members' wages to other unions without their consent. They told UBC members that they would suffer job-related harms unless they switched unions. They denied information and denied a voice on employment matters. All of these, each of these, is a separate violation of the duty of fair representation. What information did they deny them? Sorry? What information did they deny them? They denied the information issue relates to the leafleting that a particular But what they denied was that the carpenters giving out the information, not them giving out the information. That's correct. They denied the opportunity to receive information from other carpenters who were, who believed that carpenters' rights were being infringed. Now, the defendants essentially admit that some of these acts, the first two acts, the diversion of wages and the refusal to refer for work, they admit that those two would violate the duty of fair representation, but they say that we didn't do it, that wasn't the metal trades, that was the local metal trades affiliate. But what we've alleged is that it's part of a top-down metal trades policy that was dictated at the highest levels. And basic principles of agency law govern, and we've alleged that the local affiliates did the bidding of the metal trades and that the metal trades president specifically directed that all issues with carpenters' bargaining members should be handled out of his office. I'm sorry, I didn't hear. What issue were you talking about that they said you said was, they conceded could be a violation? They conceded that the refusal to refer carpenter members for work is a violation and the diversion of carpenter members' wages to other unions without their consent. They conceded those. So the issue there is agency. I see. And we have the metal trades president specifically directing and threatening the local affiliates with supervision and removal of officers if they refuse to follow the directives. And the plausibility here, by the way, is particularly high because the complaint attaches the letter from Mr. Ault, the metal trades president, where he says that the proposal to kick out the carpenters is not a good idea from the perspective of the metal trades and it would be improperly motivated by extra-unit considerations. That is, I'm quoting, that is resulting from disputes with building trades unions in other places rather than because of any action the carpenters' locals have taken against the metal trades. But he went ahead and did it anyway. He was forced to do it to keep his job. These are violations of the duty of fair representation. And with the Court's permission, I'll reserve the remaining time. You may do so, counsel. Thank you. We'll hear from the metal trades. Good morning. May it please the Court, my name is Keith Bolick. I am an attorney with the law firm of O'Donohue & O'Donohue, which represents the Metal Trades Department and the Hanford Atomic Metal Trades Council, who were the defendants before the district court and who are the appellees here today. Are the carpenters, the members of the carpenters' unions, still part of the bargaining unit? Members of the carpenters are still part of the bargaining unit, whether or not they're members of the carpenters' union. Bargaining units are the employees, and employees have a right to join a union or a right to refrain from joining a union, regardless of whether they do. Yes, of course. What I'm curious about is if the people were no longer part of the bargaining unit, if the way bargaining works is metal trades negotiates a collective bargaining agreement for metal trades, carpenters' union negotiates a collective bargaining agreement for carpenters' union, that would be a distinct legal situation from if metal trades negotiates a collective bargaining agreement, which also applies to carpenters within the, I think it's the Hanford project. Which is it? It's the latter. It is the latter. As the exclusive bargaining, sorry. I think the duty of fair representation is owed to all members of the bargaining unit. So why wouldn't the carpenters' union owe its duty of fair representation to carpenters who happen to be within the bargaining unit? And why wouldn't that duty be breached if those carpenters in the bargaining unit who are shop stewards are removed simply because of their membership in the carpenters' union? I'm not sure I quite understand your question. But let me see if I can try to answer it. If I've asked it unclearly, you can ask me what I mean. Well, what do you mean? I mean, the way it works is the metal trades department and the metal trades councils are the exclusive bargaining representatives of collective bargaining units. As such, they have a duty. What I'm trying to find out is whether the metal trades still represents these carpenters, and if so, how it can justify discriminating against them in choosing shop stewards. They still do represent them. However, it's not a question of whether you're in the bargaining unit or not. See, shop stewards are the eyes, ears, and voice of the exclusive bargaining representative in the workplace. The National Labor Relations Board found in service employees. More like a, oh, more like sort of a union-side foreman. When there are disputes, the shop steward is the one who's physically present, knows the people, and takes them to the employer. They're not the foreman. Shop stewards are a union-created position. They are filled by unions. And as was discussed in the first part of this argument, I've been doing this 15 years. I know of no union that appoints a nonmember to be a steward. The reason being is that unions have to have control over their stewards. If a steward does something that's contrary to what the union wants, the federal law prohibits unions from disciplining nonmembers. And, for example, the stewards may make decisions about grievances, but the union is going to be responsible for that decision. Yes. And to the degree of suits like this, breaches duty for representation. Yes. So unions have a very important interest in who serves as a steward. And what the allegations show in this case is – If carpenters are in the unit and they're not stewards, then why wouldn't there be discrimination running a risk of failure to bring justifiable grievances on behalf of carpenters in the bargaining unit? Let's remember what the allegations are in this complaint and what's really at issue here. There was a solidarity agreement between the carpenters and the metal trades. That solidarity agreement had a provision that said carpenters could appoint the stewards. It had three aspects to that. They could appoint the stewards. They had that right so long as the solidarity agreement was in effect and that when those stewards were appointed, they were metal trades stewards. So when they're in that position, their duty is to act on behalf of the metal trades and not the carpenters. Their duty is to represent all employees within their unit or within whatever designation – it could be craft, it could be area – regardless of the fact that they're carpenters. When the solidarity agreement was terminated, a termination that's not at issue in this case, the carpenters lost that right. And the metal trades could make a decision once that agreement was terminated and there was no longer any relationship between the metal trades and the carpenters. But isn't the short answer to Judge Kleinfeld's question that whoever is the steward still owes a duty of fair representation to the carpenters – to members of the unit who are members of the carpenters and if they don't represent them, then they have a de authoris. In other words, if the carpenter's person is no longer the steward and the person who is the steward is a member of a different union, is a member of the metal trades, that person still owes a duty of fair representation to the member of the carpenters who is a member of the bargaining unit. Yes, that's correct. And the union, as was pointed out in the Service Employees International Case Local 254, a decision of the National Labor Relations Board that was cited by the appellants, and in the National Labor Relations Board v. Boilermakers case that we cited, a union has a right to undivided loyalty with respect to stewards. They are acting on the union's behalf.  Counsel, do you agree with Mr. Singer's assertion that a purely internal union matter can be considered under the duty of fair representation, such as in this case? No, I disagree with that. Where is the point of contention? I'm still sort of struggling to find that because what this case is really about is the termination of the Solidarity Agreement because everything that the carpenters complain about happened as a result of that. The Solidarity Agreement gave them the right to appoint stewards. The Solidarity Agreement- No question that that agreement was terminable. As for what the case is really about, sure, it grows out of that, but the way the case is pleaded is that the metal trades discriminated against members of the carpenters' union by removing them as shop stewards, and the question is whether they could. Well, the appointment or removal of stewards is clearly an internal union matter. It's an internal union decision. The employer is never involved in that. They admit that in paragraph 55 of their complaint, that employers are typically not involved in the selection of stewards. Now, they try to circumvent that by claiming that because the stewards were removed, they had an impact on their employment. I don't think that can be the full answer. I mean, suppose that it was, oh, no one could be appointed a shop steward unless they had a father who had been in the union, or nobody could be a shop steward unless they were the appropriate ethnic group, something like that. I don't think there would be much problem with getting that into federal court under the duty of fair representation, would there? Yes, it would. I mean, a union steward is an internal union position. It's made no more a term and condition of employment because it's in a collective bargaining agreement. It is still an internal union position. That's what the Fifth Circuit said in Boilermakers. So there could not be a duty of fair representation claim in those hypotheticals? No. There may be a protection for the other issues. It could be an LMRDA problem or something else. Correct. It could be a, in the case of the national origin, it could be a Title VII issue, but it's not a duty of fair representation issue. Not even one as we have in this case, the shop steward loses his job. That's correct. Why? Because what we're talking about here are not wages, hours, and other terms and conditions of employment. What we're talking about are perks and privileges that are given to union representatives. You look at what they're alleging that they've lost, a union office with climate control. That can't be right because that seems very strange because the, Certainly you can bargain about who's going to have a certain shift, for example. I mean, having a better shift is a perk that is subject to bargaining. Yes. Even besides the steward question. So it has to be tied to the fact that it's a steward. That's correct because only stewards get these benefits, and by definition, stewards are only union members.  They have the terms and conditions of employment, but they're not going to have access to super seniority. The only way you can get that is if you become a steward. But if, for example, the collective bargaining agreement said, once somebody's here 10 years, they get super seniority, or for some other reason, you get super seniority. That would be a perk that is subject to bargaining and is If it's generally available to all bargaining union employees, yes. But when you are limited only to union representatives, it is not a term or condition of employment. Well, because the reason is, the whole point of it is to make them able to do their union job. Yes. So super seniority is a perfect example of that. The reason why you negotiate it for stewards, because they, as I said, eyes and ears and voice. If that steward is one of the first people laid off, the union loses that access in the workplace, and they won't be able to represent employees as a reduction of force or a layoff occurs, and that's a significant loss. So you negotiate super seniority not for that individual as a bargaining unit employee, but because the union negotiates it for itself. So that way, their representative stays on the job during the reduction of force and can handle any workplace disputes that come up, and a lot of them do in reduction of force. So that's what the plans are doing in the end. What about the one thing that your opponent, Mr. Singer, said, was that at least the way this complaint is set up, and I don't know, I can't quite find where he's talking about, the reason for this decision wasn't that they weren't members of the metal trades, but to punish them. The reason was to do that. Does it say that? Does the complaint say that? I'm not quite sure what the complaint says about that, because what they basically did in the original complaint, there were extremely conclusive allegations. There was legal conclusions. There was hardly a fact in there. The district court dismissed the complaint, granted an opportunity to amend, and what they did was they borrowed from their RICO complaint, in essence, and added it to this complaint without fully connecting the dots. The reason why they were removed was not because of building trades actions. There's no express direction alleged in the complaint to remove stewards or to divert dues or any of that kind of stuff. The reason why they were removed was because the solidarity agreement was terminated. The contractual basis for them to appoint stewards and have stewards ended. They don't dispute that, and they can't, because a solidarity agreement is an agreement between two unions with respect to one union's place in the structure of the other, and that is inherently internal. It's Bass v. International Brotherhood of Boilermakers. It is inherently internal, and if the underlying event is inherently internal, the rest of it is as well. Now, I wanted to just address a couple more points about the rest of the allegations, and these sort of go to the 12v6 standard. The carpenters alleged roughly about a dozen different breaches. The way we had to do it was there were a bunch of general allegations, a long list of things, and then we had to go and fish out what the factual content, to the extent that it was there, the rest of the complaint. So take, for example, the alleged threat of job-related harms to carpenters. They make that general allegation. There is only one specific threat in the complaint, and that was by the president of the New Orleans Metal Trades Council, who told a carpenter steward that if he wanted to continue being a steward, he had to be a member of a union that was affiliated with the council. The reasons, as I've explained, that's not a violation of the duty of fair representation. It's not a violation of the law. But that was the only threat in that complaint, and in the reply brief, the appellants state, well, there are other ones. This was just an example. This raises an Iqbal question, and it raises a Rule 8 question. If you're going to put the defendant on notice, if you have ten complaints, put them in the complaint. If you have ten threats, I'm sorry, put them in the complaint. Don't hold them until you get to discovery and then surprise both, not just the defendants, but the court with these additional allegations. Is there an agency problem in this case? There is an agency problem, too, and I'll briefly address this. Mr. Singer, my esteemed colleague, said that they alleged in detail, which they did not, an agency relationship. Setting aside the parroting of the Supreme Court's decision in carbon fuel, they alleged two things. One, that the Middle Trace president threatened to place councils under suspension or remove officers if they didn't follow his directives, and two, that any actions taken with respect to the carpenters should be referred to the Metal Trades. Now, with respect to the first one, they only alleged one directive, and that was to remove the stewards. There are no other directives alleged with respect to any of the other breaches of the duty of fair representation. The refusal to refer employees was not done by the Metal Trades Department or HamTech. HamTech wasn't involved in any of this. It was the Pasadena Metal Trades Council. The diversion of dues, that was the Albuquerque Metal Trades Council. And with respect to- Diversion of dues would be a violation of the National Labor Law, of Taft-Hartley, because you have to have a signature of where the dues are going. That's correct. You need a written, voluntary assignment. And with respect to, because I'm running out of time here, with respect to the other part about the referral- The car or not is sort of beside the point. It probably wouldn't, but it would be illegal if it were true, and could separately be dealt with. Yes, but we wouldn't be here under a duty of fair representation claim. Right. I want to just answer that- Counsel, your time has expired. Thank you very much. Thank you. Mr. Singer, you have some reserved time. Thank you, Your Honor. Very quickly, the portion of the complaint that details the conspiratorial aspect of this between the buildings trades and the metal trades, Judge Brezon, it begins really on page ER 65, and that is the specific portion that I was referring to. On the question of internal union matters and whether an internal union matter can be a violation of the DFR, that's exactly the issue that the Court addressed in the Ratana case and the- Which case, I'm sorry? The Ratana case. All right. Ratana? Ratana. Right, right. And this is cited in the brief, but it's 453 F. 2nd, 1018. And the Court specifically said, it is no answer to say that the complaint relates to appellee unions' internal policies and practices. The duty of fair representation, as a practical matter, intra-union conduct could not be wholly excluded from the duty of fair representation. And they cite the facts of the Wallace case in the Supreme Court. Internal union policies and practices may have a substantial impact upon the external relationships of members of the unit to their employer. That's what this case is about. Finally, on the question of the idea that a steward is just a member- Does a union have to allow a nonmember to run for office? To run for union office? I don't think so, no. But once they are in a position that has impact on the employer-employee relationship- So your claim is that they could have had this rule at the front end, but they can't have it at the back end? They can have the rule. It's not- they didn't fire the- the complaint is very clear. Where is it clear? Show me where it's clear. On ER 65. Okay. This is the genesis of this issue. Take a look at paragraph 35 talks about the pushback carpenters campaign that the building trades was engaged in. Paragraph 36 says that the building trades then unlawfully enlisted the metal trades to expel the carpenters. Okay. So this is what- this is what this case is about. It's not about the solidarity agreement. It's about punishing the carpenters for the building trades and nonmetal trades reason. Now, the- to also address the question- Why isn't it like running for office? I mean, before the carpenters seceded from the solidarity union or the building or the metal trades pushed them out, I don't- whichever it is, they're separate now. They were part of the same workplace polity, you might call it, and now they're not. Why isn't choice of a shop steward like running for office and exclusion of members of a different union like excluding members of a different polity from running for office? It might be if they made that decision in good faith, but that is not the decision they made. The complaint alleges they made it for a completely different and bad faith reason. I did want to say- Thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon